1  Robert C. Moest (Bar No. 62166)
   LAW OFFICES OF ROBERT C. MOEST
2  2530 Wilshire Blvd. 2nd Floor
   Santa Monica, CA 90403
3  Tel:  (310) 915-6628
   (310) 915-9897 (fax)
4  rmoest@aol.com

5  David M. Liberman (Bar No. 108469)
   9709 Venice Blvd. No. 4
6  Los Angeles, CA 90034
   Tel: (424) 298-8648
7  (310) 837-1056 (fax)
   mightyarm@msn.com
8
   Attorneys for Plaintiffs
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY MITCHELL, TOM MOSER, and GLENN WEST, <br><br> Plaintiffs, <br><br> vs. <br><br> GAVIN NEWSOM, Governor of the State of California, in his official capacity; MARK GHALY, M.D., State Health Secretary, in his official capacity; ERICA PAN, M.D., Acting State Public Health Officer, in her official capacity, <br><br> Defendants. | Case No. <br><br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

INTRODUCTION

1. This is a civil rights action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02.  Plaintiffs are three tattoo artists who own their own tattoo studios, but are prohibited by defendants from opening and operating their tattoo shops. This involuntary closure violates their rights under the Free Speech Clauses of the First Amendment to the United States

Constitution and article 1, section 2 of the California constitution.

2. Plaintiffs are closely regulated by the health departments in the jurisdictions where their shops are located, and all tattoo artists working in the shops are subject to annual certification in the prevention of disease transmission. Plaintiffs' tattoo shops, like those of most tattoo artists, are much more sanitary than hair salons, nail salons, and barber shops. Since the onset of the Covid19 pandemic, plaintiffs' shops have undertaken additional measures to safeguard the health of the tattoo artists and the public.

3. In the past two weeks, hair salons and barber shops have been allowed to reopen to provide indoor services. On September 22, 2020, the state regulation for nail salons was similarly relaxed. But tattoo parlors have been forced to remain closed. Hair cutting and styling is generally not protected by the First Amendment but tattooing is fully protected. "The tattoo *itself*, the *process* of tattooing, and even the *business* of tattooing are not expressive conduct but purely expressive activity fully protected by the First Amendment." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1060 (9th Cir. 2010) (emphasis in original).

4. Tattoo shops would have a good argument they should be allowed to open even if hair salons, nail salons, and barbershops were closed. The state would need only a rational basis for closing barbershops and nail and hair salons. But closing tattoo shops is subject to heightened scrutiny. The policy in effect today turns the First Amendment on its head. Non-protected and less closely regulated activities are permitted, but constitutionally protected activity is banned.

## JURISDICTION AND VENUE

5. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3)(civil rights). The claims arising under the California Constitution are within the supplemental jurisdiction of the Court. 28 U.S.C. § 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) since the cause of action

arises within this district. The plaintiffs reside in the district and, under California law, the defendants may be sued in the County of Los Angeles.

## PARTIES

7. Plaintiff Tiffany Mitchell is a tattoo artist who owns the Black Raven Tattoo shop at 1313 Sartori Avenue, Torrance California.

8. Plaintiff Tom Moser is a tattoo artist who owns Port City Tattoo, 4290 Outer Traffic Circle, Long Beach, California.

9. Plaintiff Glenn West is a tattoo artist who owns Palace Arts Tattoo, 772 E. Thousand Oaks Blvd., Thousand Oaks, California.

10. Defendant Gavin Newsom is the Governor of the State of California. He has promulgated the policy and rule challenged in this suit, and would be responsible for implementing the injunctive relief sought by plaintiffs in this Complaint.  He is sued in his official capacity.

11. Defendant Mark Ghaly, M.D., is the California Health Secretary. He has promulgated the policies and rules challenged in this suit, and would be responsible for implementing the injunctive relief sought by plaintiffs in this Complaint. He is sued in his official capacity.

12. Defendant Erica Pan, M.D., is the Acting State Public Health Officer and the California State Epidemiologist. She has promulgated the policies and rules challenged in this suit, and would be responsible for implementing the injunctive relief sought by plaintiffs in this Complaint.  She is sued in her official capacity.

13. The actions of defendants in promulgating and enforcing the rules restricting the right to engage in tattooing are done under color of state law within the meaning of 42 U.S.C. § 1983 and the Fourteenth Amendment.

## FACTS

14. Plaintiffs operate tattoo businesses in the Los Angeles and Ventura counties. Their tattoos are almost exclusively custom designed tattoos, and their

artistic work is sought out by patrons because of their high degree of skill and imagination. In collaboration with their clients, they create expressive works of body art.

15. The United States and the State of California are in the midst of a pandemic caused by the novel coronavirus and its associated disease, Covid19. The State of California and its Department of Public Health have issued orders covering a broad spectrum of business and personal activity. Beginning on March 19, 2020, the defendants have issued three statewide Public Health Orders that have required plaintiffs to close their businesses. The orders were issued on March 19, 2020, July 13, 2020, and August 28, 2020.

16. Under the March 19 order, almost all businesses were ordered to close, including, inter alia, barber shops, nail salons, beauty salons, and tattoo parlors.

17. In the most recent order, the defendants adopted a "Blueprint for a Safe Economy," which appears at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/COVID19CountyMonitoringOverview.aspx (last accessed Sept. 22, 2020).

18. According to the policy statement on the website,

> California has a new blueprint for reducing COVID-19 in the state with revised criteria for loosening and tightening restrictions on activities. Every county in California is assigned to a tier based on its test positivity and adjusted case rate for tier assignment including metrics from the last three weeks.

A "tier framework" has been created, color coded to help identify the risk of community disease transmission in each California county, and labeled "widespread," "substantial," "moderate," and "minimal." Los Angeles and Ventura counties are presently in Tier 2, meaning that it has been determined there is a substantial risk of transmission. A county must remain in a given tier for a minimum of three weeks before moving to a less restrictive tier.

19. Businesses are evaluated according to risk criteria set forth in the Blueprint:

- Ability to accommodate face covering wearing at all times (e.g. eating and drinking would require removal of face covering)
- Ability to physically distance between individuals from different households
- Ability to limit the number of people per square foot
- Ability to limit duration of exposure
- Ability to limit amount of mixing of people from differing households and communities
- Ability to limit amount of physical interactions of visitors/patrons
- Ability to optimize ventilation (e.g. indoor vs outdoor, air exchange and filtration)
- Ability to limit activities that are known to cause increased spread (e.g. singing, shouting, heavy breathing; loud environs will cause people to raise voice).

Businesses are permitted to open, supposedly based on the risk assessment. Under the state policy, counties may be more restrictive in permitting businesses to reopen, but may not be more lenient than the state rules.

20. Under the statewide rules, hair salons and barbershops are permitted to "open indoors with modifications" under all four risk classifications. Los Angeles County prohibited indoor operations at hair salons and barbershops when the risk in the county was "widespread," but both Ventura County and Los Angeles County now permit indoor service at hair salons and barbershops. On September 22, 2020, it was announced that nail salons would joint hair salons and barbershops as businesses permitted to offer services indoors under all four risk categories.

21. Tattooing has been classified as a "personal service," along with

massage, electrology, and cosmetology. Personal services are not permitted to open on any terms when the county risk is widespread or substantial, and are therefore prohibited in Los Angeles and Ventura counties. None of the other businesses classified as personal services is entitled to the protection of the First Amendment. Until September 22, 2020, nail salons were classified as personal services.

22. The California Department of Public Health has published "Covid-19 Industry Guidance: Expanded Personal Care Services." https://files.covid19.ca.gov/pdf/guidance-expanded-personal-care-services--en.pdf (last accessed September 22, 2020). The publication includes general rules for reopening personal care service businesses and specific rules for Body Art Professionals.

23. Tattoo shops already satisfy most of the criteria enumerated in paragraph 18 of this complaint, and can easily satisfy them all. Tattooing is already much more closely regulated on health matters than nail salons, beauty salons or barber shops. Tattoo shops and their employees are subject to annual County certification in the prevention of disease transmission, unlike barber shops and salons. They employ rigorous sanitary practices, and during the brief period shops were allowed to open during the summer, they fully implemented all the rules for reopening in the health department publication cited in paragraph 21.

24. Plaintiffs are aware of no medical or scientific justification for treating tattoo businesses more stringently that hair salons and barbershops, and allege that none exists. None of the publications by defendants contain any factual justification for the different treatment of tattoo businesses.

25. If plaintiffs engage in the practice of tattooing in violation of the Department of Public Health rules, they are subject to prosecution under Cal. Gov't Code § 8655.

///

# CLAIMS FOR RELIEF

## First Claim--Violation Of 42 U.S.C. § 1983

### [Violation of Free Speech Clause of the First Amendment]

26. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 44, as though fully set forth herein.

27. By virtue of the forced closure of tattoo businesses in the Counties of Los Angeles and Ventura, plaintiffs have been deprived of rights under the First and Fourteenth Amendments, in violation of 42 U.S.C. § 1983.

28. The forced closure of tattoo businesses must be analyzed according to the well-established rules for evaluating time, place and manner restrictions of speech, which will be upheld only if they: (1) are content neutral; (2) are narrowly tailored to serve a significant governmental interest; *and* (3) leave open ample alternative channels of communication.

29. Defendants bear the burden of justification. Defendants' closure rule is not narrowly tailored to serve a significant governmental interest, and a complete closure by definition does not leave open alternative channels of communication.

## Second Claim--Violation Of Section 1, Article 2 of the California Constitution

30. Plaintiffs incorporate paragraphs 1 through 15 by reference.

31. Article 1, section 2 of the California Constitution provides, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

32. The forced closure of plaintiffs' tattoo businesses violates article 1, section 2.

## EQUITY AND IRREPARABLE INJURY

33. There is between the parties an actual controversy as set forth herein. The plaintiffs are suffering irreparable injury and are threatened with irreparable

harm in the future by reason of the acts alleged herein, inasmuch as a substantial loss or impairment of freedom of speech will continue so long as the defendants' policy continues. Plaintiffs will be harassed, intimidated, cited, arrested, or prosecuted by the defendant, or his agents, if they attempt to performing tattooing at their shops unless relief is granted by the court.

34. Plaintiffs have no plain, adequate, or complete remedy to speedily redress the wrongs complained of herein other than this action. Any other remedy to which plaintiffs could be remitted would be attended by such uncertainties and delays that it would cause further irreparable injury, damage, and inconvenience to them. Damages, while applicable, are not adequate to fully protect plaintiffs from the continuing effects of abridgment of their expressive rights.

## RELIEF

Wherefore, plaintiffs pray:

(1) That defendants' rules requiring that tattoo shops be closed while permitting businesses offering other personal services (such as barber shops, nail salons, and hair salons) to open be declared unconstitutional under the federal and California constitutions.

(2) That defendants be preliminarily and permanently enjoined from enforcing their rules prohibiting the tattoo business while allowing businesses offering other personal services (such as barber shops, nail salons, and hair salons) to open. Chapter insofar as it prohibits plaintiff from operating a tattoo business in the City of Montebello.

(3) Costs of suit; and

///
///
///
///
///

(4) Such other and further relief as the Court deems just and proper.

Dated: September 20, 2020    Respectfully submitted,

LAW OFFICES OF ROBERT C. MOEST

-and-

LAW OFFICES OF DAVID M. LIBERMAN

By: ___S/Robert C. Moest_____
    Robert C. Moest
Attorneys for Plaintiffs